Woolam v. Tussing



NUMBER 13-00-462-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________

KATHLEEN WOOLAM, Appellant,


v.


PATRICK G. TUSSING, Appellee.

____________________________________________________________________


On appeal from the 103rd District Court of Cameron County, Texas.

____________________________________________________________________


O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo

Opinion by Justice Hinojosa


Appellant, Kathleen Woolam ("Woolam"), sued appellee, Patrick G. Tussing ("Tussing"), to enforce a spousal support
provision contained in an agreement between them incident to their divorce and incorporated into their final divorce decree.
Following a bench trial, the trial court rendered judgment in favor of Tussing. This appeal ensued. In four issues, Woolam
contends the trial court erred in: (1) not holding Tussing in contempt of court, (2) failing to grant her a judgment against
Tussing for breach of contract, (3) failing to grant her a judgment against Tussing for court costs and post-judgment
interest, and (4) failing to grant her attorney's fees. We affirm in part, and reverse and remand in part.

A. Background

Tussing and Woolam entered into an agreement incident to their divorce on April 4, 1991. In the agreement, Tussing
agreed to pay Woolam contractual alimony. The agreement was incorporated and approved by the trial court in the final
decree of divorce signed on April 4, 1991. The agreement provided, in relevant part:

It is the mutual desire of the parties to provide a continuing measure of support for KATHLEEN WOOLAM TUSSING,
Receiving Party, after divorce. These support payments undertaken by PATRICK GEORGE TUSSING, Paying Party, are
intended to qualify as contractual alimony . . . . This alimony obligation undertaken by Paying Party is contractual in nature
and is not an obligation imposed by order or decree of court. . . . PATRICK GEORGE TUSSING will pay to KATHLEEN
WOOLAM TUSSING $1,000.00 per month as and for alimony. These payments will be payable for a period of 120
months, on or before the 1st day of each month, beginning on the first such day after the date of divorce in this cause. A
lump sum payment of $25,000.00 on the 121st month following the date of divorce shall be paid by PATRICK GEORGE
TUSSING to KATHLEEN WOOLAM TUSSING. 

The decree of divorce further stated:

The parties have consented to the terms of this decree and stipulated it is a contract. The Court finds the parties have
entered into an Agreement Incident to Divorce. The Court approves the agreement and makes it part of the decree as if it
were recited verbatim. 

On November 13, 1998, Woolam filed a petition for "Enforcement of Spousal Maintenance and Contempt" against Tussing
for failure to pay the contractual alimony. In the petition, Woolam listed the scheduled payments, from April 1992 to
November 1998, that Tussing had not paid. (1) She claimed that Tussing owed her $80,000.00 as of November 12, 1998,
plus pre-judgment interest until the date of judgment and post-judgment interest until paid. Woolam asked the trial court to
award her a "money judgment in the amount of $80,000.00, plus pre-judgment and post-judgment interest, for the unpaid
payments to which [she] is entitled. . . . [and] issue an order directing Respondent to pay all such sums due to
Petitionerinstanter. . . . [and hold Respondent in contempt] for each violation of the Court's order alleged above." Woolam
further requested that she be "granted judgment for each alimony payment due and unpaid by the Respondent from the date
of the filing of this Petition until hearing can be had, and that the Respondent be held in contempt, jailed, and fined for each
violation of the Court's order that occurs until the hearing can be had." Alternatively, Woolam requested that, "if the Court
finds that any part of the order sought to be enforced is not specific enough to be enforced by contempt, the Court enter a
clarifying order restating the terms of the order, decree, or judgment in a manner specific enough to allow enforcement by
contempt and specifying a reasonable time within which compliance will be required." She also asked that Tussing be
ordered to pay reasonable attorney's fees since she had to secure the services of an attorney to enforce and protect her rights. 
Tussing answered with a sworn general denial, counterclaimed for usury, and raised the defenses of inability to pay,
unenforceability except in contract, statute of limitations, payment, no provision in agreement for prejudgment interest, and
collateral and promissory estoppel.

The trial court held a hearing on June 18, 1999. At the hearing, Woolam asserted that Tussing had failed to make the
payments and requested enforcement of the alimony and "if the Court so deems necessary, to have the Court find him in
contempt for his failure to pay the alimony." At the conclusion of the hearing, the trial court denied Tussing's usury and
promissory estoppel claims and requested briefs

regarding this inability as to contempt issue. This thing being enforceable in contract only, how that language might affect
the contempt issue. The statute of limitations as to anything prior to four years before the filing, and then any briefing you
want to do regarding the letter and subsequent actions relative to the insurance policy, and any question about attorney fees
for the respondent . . . . I am going to ask for the brief additionally to include the question of the issue - as to contempt
only, on the post-filing non-payments.

 On August 18, 1999, the trial court sent a letter to all counsel stating, in relevant part, as follows:

The court is of the opinion that the alimony in question is contractual alimony which is not enforceable by contempt either
by its own terms in the contract or by law. The petitioner has available to her contractual remedies if she chooses to use
them but the court is without authority to enforce the provisions of the contractual alimony by contempt.

In the alternative, the petitioner requests that the court clarify the agreement so that it can be enforceable by contempt. The
court is of the opinion that the problem is not that the provisions are unclear and require clarification but that they are all
too clear and the law does not allow for enforcement of this contractual allegation by contempt.

Woolam filed a motion for reconsideration on September 7, 1999, in which she requested that the court reconsider
"Petitioner's request and pleadings for a judgment against Respondent which was not addressed by the court in the court's
letter dated 08/18/99. . . ." She further stated:

In Petitioner, KATHLEEN WOOLAM'S Petition for Enforcement of Spousal Maintenance and Contempt, Petitioner pled
for a money judgment in the amount of $80,000.00 plus pre-judgment and post-judgment interest for the unpaid alimony
payments to which Petitioner is entitled, together with a judgment for attorney's fees and costs.

At the hearing held on Petitioner's motion for enforcement and contempt held June 18, 1999, the Petitioner conclusively
proved that the Respondent owed her $86,500.00 in past due delinquent alimony for the time period of April 1, 1992
through June 18, 1999. Respondent did not deny that such alimony payments were not [sic] due, only that the Petitioner
could [sic] enforce such payments by contempt. Petitioner further stipulated on the record that she waived her claim for the
pre-judgment interest.

The court heard the motion on October 14, 1999. At the hearing, Woolam's counsel argued:

If the Court will recall, we had a hearing regarding some contractual alimony payments that Mr. Tussing was ordered to pay
Ms. Woolam, and the testimony was unequivocal that he hadn't paid.

The Court denied my request for contempt, and that's fine, Judge. But in addition thereto, I requested that judgment be
entered against Mr. Tussing for the amount that he owed. That what he owed be reduced to judgment, and you did not rule
on that, Judge, you did not give her a judgment, but you didn't say she wasn't entitled to the judgment, you just said I hadn't
asked for that relief. When in fact, Your Honor, I did. When I looked at my original petition, I requested the Court to enter
judgment against him, and also that judgment have post-judgment interest set on it as well. 

Now, my claim for pre-judgment interest in the hearing itself, I waived, and said that's no problem, I'll waive that request.
But as far as the request for a judgment against Mr. Tussing himself, that was specifically plead in my petition, Judge. And
since the evidence is undisputed that he did not pay, I am entitled to my judgment, Your Honor. And I should not be
required to replead and start a new lawsuit to get something that I asked for in the first place.



* * * * *



I set out what the obligation was, page 3, how much he owed as of the time of filing, and specifically requested, petitioner
requests that Court award the petitioner a money judgment in the amount of $80,000 plus pre-judgment and post-judgment
interest for the unpaid payments to which petitioner is entitled.

And then further on, I also referred to the fact that more payments were going to be due between the time of the hearing and
the filing of the motion, and asked that "petitioner therefore requests that petitioner be granted judgment for each alimony
payment due and unpaid by the respondent from the date of the filing of this petition until hearing can be had, and that the
respondent be held in contempt, jailed or fined."

Your Honor, I asked for relief of contempt and judgment. You did not believe that my client was entitled to a contempt,
that's fine, but at the least, she is entitled to a judgment. And the evidence was unequivocal and uncontested that he hadn't
paid, Judge. The only evidence that he brought that he had paid was one $500.00 payment that was brought before the
Court, and I said fine. So the total that was due as of the date of the hearing is $86,500, as of June 18, 1999. And that's
what we request judgment for, Your Honor. 

Tussing's counsel responded, "The petition requests two things, the clarification and contempt. It is in her prayer that she
asks for judgment. But at any rate, it still hasn't addressed the issue of the statute of limitations."

At the end of the hearing, the Court stated, "Well, at any rate, the Court has previously ruled on this matter when it was
fresh in the Court's mind. I don't have enough recollection of this matter to change anything at this point. I am going to
deny the Motion to Reconsider."

On June 5, 2000, the trial court entered its written order. The court found that the parties had entered into an agreement
incident to divorce which included a provision for alimony, and that Woolam "sought to enforce past due alimony
payments by contempt and in the alternative, to clarify the prior order . . . [but that] the alimony at issue before the court is
not enforceable in contempt either by its own terms in contract or by law. The provisions regarding alimony in the Final
Decree of Divorce are not unclear and do not require clarification." The court then denied Woolam's motion for contempt
and clarification, and denied Tussing's counter-motion for usury. The court further stated, "all other matters left under
advisement are moot. All relief not expressly granted herein is denied."

B. Contractual Alimony

In her second issue, Woolam contends the trial court erred in failing to grant her a judgment against Tussing for his
nonpayment of alimony in accordance with their contractual alimony agreement. Specifically, Woolam asserts the court
failed to recognize that she did in fact plead contractual remedies.

Before the legislature authorized court-ordered spousal support, (2) parties to a divorce could enter into written agreements
providing for spousal maintenance. See Francis v. Francis, 412 S.W.2d 29, 32 (Tex. 1967); see also Tex. Fam. Code Ann.
§ 7.006(a) (Vernon 1998). (3) The court could then incorporate the agreement into the final divorce decree. See Tex. Fam.
Code Ann. § 7.006(b) (Vernon 1998). (4) Because such settlement agreements did not constitute court-ordered alimony,
they were not void. Francis, 412 S.W.2d at 29. The Francis court held that an assumed obligation for spousal support is
properly characterized as a contractual duty having "whatever legal force the law of contracts will give to it." Id. at 31; (5)
see generally McCray v. McCray, 584 S.W.2d 279, 281 (Tex. 1979). Moreover, the court's approval of the agreement and
incorporation of it into the final divorce decree did not transform contractual payments into prohibited court-ordered
alimony. Francis, 412 S.W.2d at 29; see also Klise v. Klise, 678 S.W.2d 545, 548 (Tex. App.-Houston [14th Dist.] 1984,
no writ). 

 Following Francis, the courts of appeals have consistently applied contract principles and rules of construction in
interpreting agreements providing for spousal support. See Cardwell v. Sicola-Cardwell, 978 S.W.2d 722, 725 (Tex.
App.-Austin 1998, pet. denied); Powers v. Powers, 714 S.W.2d 384, 390 (Tex. App.-Corpus Christi 1986, no writ); Deen v.
Deen, 631 S.W.2d 215, 216 (Tex. App.-Amarillo 1982, no writ);Conner v. Bean, 630 S.W.2d 697, 700-01 (Tex.
App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.); Myrick v. Myrick, 601 S.W.2d 152, 153 (Tex. Civ. App.-Waco 1980, no
writ); Dicker v. Dicker, 434 S.W.2d 707, 713 (Tex. Civ. App.-Fort Worth 1968, writ ref'd n.r.e.). 

In his brief, Tussing contends that Woolam failed to plead enforcement under breach of contract, but rather pleaded
enforcement by contempt. He further asserts that Woolam's petition:

contains no language raising a breach of contract claim. The Petition for Enforcement does not include the words 'contract'
or 'breach of contract'. Appellant thus could have pled her breach of contract action by expressly alleging 'breach of
contract' or by specifying the elements of a breach of contract cause of action.

In the alternative, Tussing contends that if Woolam did plead a breach of contract, then she failed to preserve such error,
and she cannot bring a breach of contract claim for the first time on appeal.

The purpose of pleadings is to give the adverse parties notice of each party's claims and defenses, as well as notice of the
relief sought. Perez v. Briercroft Serv. Co., 809 S.W.2d 216, 218 ( Tex. 1991); Kissman v. Bendix Home Sys., 587 S.W.2d
675, 677 (Tex. 1979); Gonzalez v. City of Harlingen, 814 S.W.2d 109, 111-12 (Tex. App.-Corpus Christi 1991, writ
denied). Pleadings provide "fair notice" of the claim involved, when an opposing attorney of reasonable competence could
examine the pleadings and ascertain the nature and basic issues of the controversy and the relevant testimony. State
Fidelity Mortgage Co. v. Varner, 740 S.W.2d 477, 478 (Tex. App.-Houston [1st Dist.] 1987, writ denied). In determining
whether a cause of action was pleaded, the plaintiff's pleadings must be adequate for the court to be able, from an
examination of the pleadings alone, to ascertain with reasonable certainty and without resorting to information from
another source, the elements of the plaintiff's cause of action and the relief sought with sufficient information on which to
base a judgment. Stoner v. Thompson, 578 S.W.2d 679, 683 (Tex. 1979); Henderson v. Henderson, 694 S.W.2d 31, 35-36
(Tex. App.-Corpus Christi 1985, writ ref'd n.r.e.). The general rule is that pleadings will be construed as favorably as
possible to the pleader. Gulf, C. & S.F. Ry. Co. v. Bliss, 368 S.W.2d 594, 599 (Tex. 1963); Henderson, 694 S.W.2d at 36. 
"The court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action
has not been specifically alleged. Every fact will be supplied that can reasonably be inferred from what is specifically
stated." Bliss, 368 S.W.2d at 599.

A petition seeking recovery for breach of contract must allege: (1) the existence of a contractual relationship between the
parties; (2) the substance of the contract that supports the pleader's right to recover; and (3) a breach of the contract by the
defendant. Hur v. City of Mesquite, 893 S.W.2d 227, 233 (Tex. App.-Amarillo 1995, writ denied); Gonzalez, 814 S.W.2d
at 112. As this Court stated in Gonzalez:

It is elementary that there must be an allegation of a contractual relationship. It is necessary that the petition aver every
material part of the contract and so much of it as essential to the cause of action should be specially set out. Since no
recovery can be had for a breach of contract that is not pleaded, the petition must show a breach of contract by the
defendant, and is defective if it fails to do so.

Gonzalez, 814 S.W.2d at 112 (quoting Koenning v. Manco Corp., 521 S.W.2d 691, 695 (Tex. Civ. App.-Corpus Christi
1975, writ ref'd n.r.e.)). 

In her petition, Woolam alleged that a contractual relationship for spousal maintenance/alimony existed between her and
Tussing. (6) She established that the agreement was incident to the divorce and incorporated into the divorce decree, and its
purpose was to provide for her support. The petition further alleged that Tussing had breached the agreement by not
making the monthly payments from April 1992 to November 1998. Consequently, Woolam stated a cause of action for
breach of contract.

Our review of the record also establishes that Woolam preserved this issue for appeal. Not only did her petition allege a
cause of action for breach of the alimony agreement, but Woolam also brought the issue to the trial court's attention in her
motion for reconsideration. See Tex. R. App. P. 33.1. We conclude that Woolam presented a breach of contract cause of
action before the trial court, and the trial court erred in failing to recognize it as such. We sustain Woolam's second issue.

C. Enforcement by Contempt

In her first issue, Woolam contends she was entitled to enforce the alimony obligation by contempt. Woolam argues that
under section 8.009 of the Texas Family Code, a trial court may enforce by contempt an agreement for the payment of
maintenance voluntarily entered into between the parties.

A provision in a divorce decree ordering payment of support to a former spouse may be enforced as a contractual
obligation; however, such a provision cannot be enforced by contempt unless it is authorized by statute or constitutional
provision. Ex parte Hall, 854 S.W.2d 656, 659 (Tex. 1993). Before September 1, 1995, (7) although an agreement to pay
post-divorce support was enforceable as a contractual obligation, Texas statutes and public policy did not sanction
court-ordered alimony for a spouse after a judgment of divorce was signed. Francis, 412 S.W.2d at 32. A marital property
agreement is treated as a contract and its meaning is governed by the law of contracts, but not by the law of judgments,
even though the agreement is incorporated into a final divorce decree. McGoodwin v. McGoodwin, 671 S.W.2d 880, 882
(Tex. 1984). 

Tussing's obligation to make monthly support payments to Woolam arose out of an agreement between the parties made
incident to their divorce, and recognized by former section 3.631 (8) of the family code, now section 7.006. See Tex. Fam.
Code Ann. § 7.006 (Vernon 1998). Under case law and former section 3.76(b) (9) of the family code, an award of money
payable in future installments in the nature of a debt was not enforceable by contempt, unless the fund was in existence at
the time of the decree or as provided in former section 3.75. (10) Since April 17, 1997, an action to enforce a decree is
governed by chapter 9 of Title 1 of the family code. See Tex. Fam. Code Ann. §§ 9.001 - 9.302 (Vernon 1998). The
provisions of former section 3.76 were substantially carried forward into section 9.012(b), which now provides that the
court's contempt power may not be used to enforce an award in a decree of future installments, except for a sum of money
in existence at the time the decree was rendered, or a matured right to future payments. See Tex. Fam. Code Ann. § 9.012
(b) (Vernon 1998). Therefore, because the spousal support in this case was not authorized by statute, but was instead based
on an agreement of the parties, we conclude that it is not enforceable by contempt.

Woolam also argues that under section 8.009 of the Texas Family Code, a trial court may enforce alimony by contempt.
However, section 8.009 did not become effective until September 1, 1995. When it enacted that statute in section 10.02 of
Acts 1995, 74th Leg., ch. 655, the legislature provided that spousal maintenance could be ordered "in a suit for divorce,
annulment, to declare a marriage void, or in a proceeding for maintenance in a court with personal jurisdiction over both
former spouses following the dissolution of their marriage by a court that lacked personal jurisdiction over an absent
spouse." (11) Section 10.03(a) specifically provided that "sections 10.01 and 10.02 of this article take effect September 1,
1995, and apply only to an action filed on or after that date." (12) Section 10.03(c) stated, "an action to which section 10.02
of this article does not apply is governed by the law in effect at the time the action was filed, and that law is continued in
effect only for that purpose." (13)

Because appellant's divorce action was filed before September 1, 1995, we conclude the trial court did not have authority to
enforce by contempt the spousal support provision of the parties' agreement incident to divorce. We overrule Woolam's
first issue.

D. Costs, Interest, and attorney's Fees


In her third and fourth issues, Woolam contends she is entitled to an award of costs, post-judgment interest, and attorney's
fees. Because these issues are incident to the court's failure to recognize Woolam's cause of action for a breach of contract,
we will not address them here. See Tex. R. App. P. 47.1.

We affirm the trial court's order denying appellant's request that the alimony obligation be enforced by contempt. We
reverse the trial court's order regarding appellant's breach of contract cause of action and remand the case to the trial court
for further proceedings consistent with this opinion.



FEDERICO G. HINOJOSA

Justice



Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

2nd day of August, 2001.

1. Tussing made payments from April 1991 to March 1992.

2. In 1995, the Texas Legislature provided for limited court-ordered maintenance from the future income of one spouse for
the support of the other spouse after the dissolution of their marriage. See Tex. Fam. Code Ann. §§ 8.01 - 8.011 (Vernon
1998 and Vernon Supp. 2001).

3. In 1991, the current Texas Family Code section 7.006 was Texas Family Code section 3.631. See Act of May 31, 1981,
67th Leg., R.S., ch. 712, § 2, 1981 Tex. Gen Laws 2656, 2656-57 (amended 1997). The sections are substantially similar.

4. Id.

5. Even before the Francis decision, the supreme court had held that a settlement agreement adopted in a divorce decree
falls within the purview of contract law. See Ex parte Jones, 163 Tex. 513, 358 S.W.2d 370, 375 (Tex. 1962) (holding that
judgment based on terms of settlement agreement must be interpreted under law of contracts rather than law of judgments).

6. Although Woolam never actually uses the word "contract" in the petition, a review of the pleadings establishes the
obvious nature of her complaint as a breach of the contractual maintenance agreement.

7. See Tex. Fam. Code Ann. §§ 8.01-8.011 (Vernon 1998 & Vernon Supp. 2001). Current sections 8.01 through 8.011
were sections 3.9601 through 3.9611 when they were adopted and became effective September 1, 1995. See Act of May
26, 1995, 74th Leg., R.S., ch. 655, § 10.02, 1995 Tex. Gen. Laws 3543, 3580, repealed by Act of April 3, 1997, 75th Leg.,
R.S., ch. 7, § 3, 1997 Tex. Gen. Laws 8, 43. 

8. Act of May 31, 1981, 67th Leg., R.S., ch. 712, § 1, 1981 Tex. Gen. Laws 2656, 2657, repealed by Act of April 3, 1997,
75th Leg., R.S., ch. 7, § 3, 1997 Tex. Gen. Laws 8, 43. Section 3.631 was in effect at the time of this divorce in 1991.

9. Act of May 30, 1983, 68th Leg., R.S., ch. 424, § 2, 1983 Tex. Gen. Laws 2346, 2352, repealed by Act of April 3, 1997,
75th Leg., R.S., ch. 7, § 3, 1997 Tex. Gen. Laws 8, 43. Current version at Tex. Fam. Code Ann. § 9.012 (Vernon 1998).

10. See id. Current version at Tex. Fam. Code Ann. § 9.011 (Vernon 1998).

11. See Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 10.02, 1995 Tex. Gen. Laws 3543, 3580, repealed by Act of April
3, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex. Gen. Laws 8, 43. 

12. See Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 10.03, 1995 Tex. Gen. Laws 3543, 3580, repealed by Act of April
3, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex. Gen. Laws 8, 43. 

13. Id.